### No. 9203.

### METAIRIE CEMETERY ASSOCIATION vs. BOARD OF ASSESSORS.

A cemetery set apart and used for burying the dead, is a "place of burial" within the intendment of Art. 207 of the Constitution, and, as such, exempt from taxation unless leased or used for purposes of private or corporate profit or income.

The cemetery of plaintiff is not leased, nor is it used for any purpose of profit or income. The fact that lots in the same are sold to persons for purposes of interment, does not constitute a *use* of the property within the meaning of the law. The property here assessed, is the unsold portion of the cemetery. It has neither been used nor sold for profit, and, even if the latter were a use the condition of its exemption has not been broken.

Under the law of the State, shares of stock of corporations are only taxed on the surplus of their value above the value of the real estate belonging to the corporation. As the proof is perfect that the stock represents absolutely nothing but the value of the exempted real estate, it is clear that there can be no surplus value of the stock for taxation.

A PPEAL from the Civil District Court for the Parish of Orleans. *Lazarus,* J.

*Breaux and Hall* for Plaintiff and Appellee.

*Walter H. Rogers,* City Attorney, *Wynne Rogers* and *L. O'Donnell,* Assistant City Attorneys for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. The owners of a certain tract of land formerly known as the Metairie Race Course, with certain other individuals, formed themselves into a corporation under the general law of the State, for the purpose declared in their charter, " to be the establishment and maintenance of a cemetery and graveyard" on the property above mentioned.

In 1873, the legislature, by Act No. 60, of that year took cognizance of the act of incorporation, and made it a penal offense to wilfully destroy any tomb in said cemetery, remove any body therefrom or cut or break any tree or plant therein, and further exempted " the property of the association from all taxation, State as well as municipal or parochial, so long as it remained dedicated to the purposes of a cemetery."

The general revenue acts of the State, at and prior to that time, exempted from taxation, " cemeteries and graveyards set apart and actually used for the purpose of interring the dead." Article 207 of the Constitution of 1879, expressly exempts from taxation " all places of burial—provided such exempted property be not used or leased for purposes of private or corporate profit or income."

The uncontradicted evidence fully shows, that the property has been established and maintained as and remains exclusively dedicated to the purposes of a cemetery; that large expenditures have been made to fit it for this sole purpose; that it has been enclosed with appropriate walls and fences; that buildings proper for the temporary

reception of the dead have been constructed; that avenues, drives and walks have been built; that trees and flowers have been planted, and that all the resources of landscape gardening have been employed to beautify and ornament the grounds; that they are divided into plots appropriate for use for tombs and burial places; that many interments have taken place and expensive tombs have been erected; that persons are employed to supervise and care for the cemetery; that the property is not, and has never been used for any other purpose.

At the formation of the corporation a capital stock was formed, fixed at $120,000, divided into 1200 shares of $100 each. Of this stock, eight hundred shares were assigned to the owners of the property in consideration for its transfer to the corporation, while the remaining four hundred shares were taken by other subscribers who paid for the same and the funds arising therefrom were to be, and were employed in "the embellishment, improvement and ornamentation of the cemetery." Large additional sums have been expended for the same purpose.

No attempt was ever made to tax this property until the year 1883 when the defendant Board of Assessors, for the first time, placed it upon the assessment rolls of 1883. In so doing, they valued the stock of the corporation at $118,000. They valued the cemetery at $50,000. They deduct the latter from the former sum to ascertain the taxable value of the stock; and they return the company for taxation on real estate, $50,000, and on surplus stock, 68,000, making total of $118,000.

After timely and formal application to the Board for the cancellation of this assessment, and after refusal by the Board, the plaintiff brings the present action to compel such cancellation.

Amongst the several grounds of exemption urged by plaintiff, we find it necessary to notice only one, viz: That based on Art. 207 of the present Constitution, which, as we have seen, exempts "all places of burial—provided such exempted property be not used or leased for purposes of private or corporate profit or income."

· We will consider:

1. The taxability of the property.
2. That of the stock.

I.

That this property is, as a whole and in all its part, a *cemetery*, no one can dispute. It is used for that purpose and for no other. To that purpose it is dedicated in the charter of the corporation. No suggestion is made that it is excessive in extent or that any fraud upon

the law is contemplated by seeking under that name, to cover from taxation property not really intended or expected to be used for that purpose. On the contrary, the appropriateness of the dedication has been expressly recognized by the law-making power in Act No. 60 of 1873, above referred to.

Now, what is a cemetery? Lexicographers define it to be " an area or place where the dead are buried." Worcester's Dictionary.

In other words, it is, in the very language of the Constitution a " place of burial," by which is meant undoubtedly a place dedicated and set apart for the burial of the dead. The attempt to restrict the meaning of the words of the Constitution to the narrower import of tenanted graves, spots of ground actually occupied by buried corpses, is utterly vain. The words are to be interpreted according to the known habits and usages of the people, which are to congregate their dead in places set apart for that sacred purpose, encircled by holy influences and subject to regulations for preserving the decency, peace and sanctity of all their surroundings.

What would be the security of those who venerate their dead, if the tax-gatherer might enter such sacred precincts and sell, at public outcry, the land adjoining their tombs to some publican who might build thereon a bar-room or a brothel?

The words are to be interpreted also with reference to existing and prior legislation on the same subject, which had exempted from taxation " cemeteries and grave yards set apart and actually used for the purpose of burying the dead." Rev. Statutes, Sec. 3233.

The obvious intention was to give a constitutional sanction and guarantee to such ancient and habitual exemptions. We have not a doubt that this cemetery, as a whole, is a " place of burial " within the intendment of the Constitution. Then it is exempt from taxation, unless, under the proviso of the Constitution, it is *leased* or *used* for purposes of private or corporate income or profit.

That it is not *leased* for any purpose is fully proved.

The evidence is equally perfect that it is not *used* for any other purpose than that of a cemetery, or for any purpose which yields any private or corporate profit or income. The sole fact, upon which is predicated the charge of use for corporate profit, is that the corporation sells plots of the ground to persons desiring to build tombs and bury their dead therein, at prices which, if all were sold, would yield a profit on the investment.

But, it is to be observed that such sales do not, in any manner, change the use of the property but rather preserves and confirms its use and dedication as a place of burial.

In establishing this exemption, the law concerns itself exclusively with the quality and use of the property, and not at all with its owner-ship or disposition. So long as it retains the character of a "place of burial," it matters not who owns it, how often it may change hands nor at what prices—as a "place of burial," it remains exempt. The sale of property is not an *use* of it within any signification, technical or general, of that word.

Every cemetery belongs to some owner; and the lots therein are not usually given away, but are sold to persons desiring to acquire them for purposes of interment. If the law had intended to exempt such "places of burial," only on condition that they should not be sold, it would have said so. Under such construction, the unoccupied lots of perhaps every cemetery in New Orleans, would be equally liable to taxation with those of plaintiff. Indeed, churches, hospitals, orphan asylums and other exempt property are equally subject to be sold at the will of the owners, and on the same theory might lose their ex-emption. Possible profits on such sales are not matters of judicial concern.

But, such construction would be absurd; because, then *until sold*, the condition of the law would not have been violated; and, *when sold*, how could the property be taxed to the seller? Thus, in the instant case, the property assessed is admitted to be the *unsold* portion of the cemetery. As we have held, it is "a place of burial," within the in-tendment of the law. It is clear from the evidence that it is not used for any purpose of profit or income; and it has not been sold. Then in what way has any breach of the condition which excludes ex-emption been committed?

The question answers itself. This property is exempt from taxation and was improperly listed on the assessment roll.

## II.

The question as to the taxability of the stock is equally free from difficulty.

The proof is perfect that this corporation has no source of revenue or income. It conducts no business except that of administering and caring for the cemetery, which is simply productive of expenditure. It has no accumulated funds. Its stock originally represented its real estate and the improvements thereon. As lots have been sold, the pro-ceeds, not consumed in improvements, have been returned to the stock-holders in reimbursement of their investments, and have passed into the domain of taxable private values. The sold lots are a diminution

*pro tanto* of the property of the corporation. The stock now represents nothing but the value of the real estate remaining unsold.

Whatever be the power of the legislature to subject to taxation, shares of stock, independently of any consideration of the elements which give them value, the law in force in this State only taxes the surplus of their value, over and above the value of the real estate owned by the corporation. The fact that this real estate is exempt from taxation, does not impair, but increases its value, and that value must still be deducted from the market value of the stock in order to ascertain the surplus liable to taxation.

In this case, as the stock represents absolutely nothing but the real estate, it is clear that it can have no surplus value. The attempt of the assessors to create an apparent surplus by assessing the real estate at less than one-half the value of the stock cannot succeed. They have themselves elicited evidence found in the record, tending to show that the property is really worth more than the market value of the stock. But, in truth and in fact, the market value of the stock is simply and necessarily the market value of the real estate, and there is, and can be, no surplus for taxation.

Judgment affirmed.

Rehearing refused.

### CONCURRING OPINION.

POCHÉ, J.   In my opinion the exemption claimed by plaintiffs could not have been sanctioned under the act of 1873, or any other legislation conforming to the Constitution of 1868.   The property of plaintiff corporation is not used for either "church, school or charitable purposes," the three enumerated objects which that Constitution contemplated as warranting an exemption from taxation of any property.

But it is equally clear to my mind, that, independently of any legislative action, the property of that corporation is exempt from taxation under the provisions of article 207 of the present Constitution, which are self-operative; and are beyond the reach of adverse action of the legislative, as well as of the judiciary, departments of the government.

I see no reason or evidence in the record sufficient to render this corporation amenable to the proviso contained in the article of the present Constitution to which I have referred.

The whole ground owned by the corporation is dedicated exclusively to the burial of the dead. The lots which are actually occupied by human bodies, have ceased to be the property of the corporation, and

the remaining lots, which are the only property of the Association, are neither leased nor used for any purpose whatever.

Hence I fail to see how it can be conceived that the property of the corporation, which is, in every sense of the term, a place of burial, is either "leased or used for private or corporate profit or income." The funds realized from the sale of lots are applied first to the payment of expenses necessary to maintain and embellish the grounds, preparatory to sales of lots, and the surplus is used in reimbursing the stockholders for the respective amounts contributed by them towards the purchase of the grounds and the laying out of the cemetery.

If it should happen in the remote future, that an entire sale into burial lots of the whole ground, would realize an amount in excess of the original cost price, and of the disbursements made for the administration and maintenance of the cemetery, the distribution of that surplus fund among the stockholders, could not in my opinion be considered as a private or corporate income or profit. It would not be more significant in that sense than the enhancement in value of any property owned and used for religious, charitable or school purposes, and for those reasons exempt from taxation under the present Constitution.

The property of many churches, charitable and otherlike institutions, situated in the central portion of a growing city, have doubled and trebled in value, and are sometimes sold for the purpose of removing such institutions from business centers. I imagine that no one would dream of qualifying the capital thus increased as either a corporate income or profit.

It is plain to my mind that the term "places of burial" as used in the Constitution is synonymous with "grave yards" and "cemeteries" and that plaintiff's cemetery is as justly entitled to exemption, as any of the numerous "graveyards" and "cemeteries" in this State, which are all owned by corporations, either church or private.

I find a striking analogy between the grounds which justify an exemption in this case, and those which were presented in the case of the State ex. rel Administrator Tulane Education Fund vs. Board of Assessors, 35 Ann. p. 668, and I refer to my dissenting opinion in that case for additional reasons in support of my concurrence with the opinion prepared by Mr. Justice Fenner in this case.

## DISSENTING OPINION.

MANNING, J.   Exemptions from taxation are rigidly construed, and the rule holds good in the interpretation of organic as well as statutory law.

The Constitution of 1868 empowered the legislature to exempt from taxation property actually used for church, school, or charitable purposes, art. 118.   A cemetery is not used for either of these purposes, and therefore when the legislature in 1873 exempted from taxation the property of the plaintiff, Sess. Acts, p. 117, its action was null because beyond the power conferred upon it.

The ingenious argument of the plaintiff's counsel that a cemetery used by a Christian community who inter their dead with the ecclesiastical ceremonies, is used for church purposes will not apply to the plaintiff association.   Its property is for sale to all the world, restricted only to the use of it for burial. A Pagan or Mahomedan or Chinaman or Jew may buy a lot for the burial of the dead of his faith therein, and the non-Christian might be laid there without any ecclesiastical ceremony at all.

The constitution of 1879 exempts from taxation places of religious worship or burial provided they are not used or leased for private or corporate profit or income.   Art. 207.   The lots in this cemetery that are already sold are places of burial not used for income either private or corporate and are exempt, but the land not yet used and still held for corporate profit is not protected by the Constitutional exemption.

The self-imposed restriction of the ground to burial purposes alone is in the Association's own interest.   No one would buy a lot for a burial-place if other parts of the grounds were or could be sold for purposes that wound the sensibilities or invade the sanctity that envelops the last resting-place of our friends.   And that the property is a good commercial investment is made plain by the evidence that the stock is quoted on 'Change and was worth 112 in January 1883 and has been as high as 120, the par value being 100.   Only a little more than one-tenth of the land has been sold and realized $100,000. while the original purchase with the subsequent cost of converting it into a cemetery and beautifying it somewhat exceeds that sum.   The same prices for the unsold land will realize to the plaintiff three quarters of a million dollars on an investment of $120,000.   Such return is enough to satiate the cupidity of the most ardent speculator without trading on reverence for the dead.

Bermudez, C. J., concurs in this opinion.