Dear Ms. McCann:
You have requested an opinion of this Office on certain matters related to the restoration of cemetery spaces under Louisiana law. Specifically, you have asked the following three questions:
 1) To what situations and to whom do La.R.S. 8:308, 8:903, and 8:903.1 apply?
 2) In what instance, if any, does the law allow for the demolition of a cemetery structure?
 3) What steps must a cemetery follow to establish that a cemetery space is abandoned?
We herein address each of these important questions. We also include what we consider to be a necessary discussion of historic preservation as it relates to this matter.
It is our understanding that these questions have arisen out of several complaints to your office regarding cemetery authorities that have proposed demolitions of decaying or derelict tombs or other cemetery spaces in recent months. In this vein, we feel that it is necessary to review the cultural, historical, and economic importance of historic cemeteries in Louisiana in order to support our overall conclusion that the demolition of cemetery spaces is permitted in only extremely limited situations and that such an option is disfavored under the law and should be discouraged. *Page 2 
I. Introductory Remarks
As you are well aware, cemeteries are considered by most cultures to be sacred spaces. These spaces contain the physical remains of human beings — generally the ancestors of a community — and are held to be inviolate in nature by many.[1] Admittedly, this inviolate nature of cemeteries may be a belief of fairly recent antiquity in the Western world and human remains do not always win out in the "march of progress" when their final resting places are in the way of the expansion plans of the living.[2] Nonetheless, there is currently a generally held sanctity for cemeteries in American culture in general and in Louisiana in particular.[3] As a result of the unique nature of many south Louisiana cemeteries, especially the opulent above-ground crypts and mausoleums in New Orleans, Louisiana citizens are generally cemetery proud and cemetery conscious. This pride and consciousness fosters a protectionist attitude amongst our citizens that is embodied in our laws.
Our cemeteries are world-renowned for their architecture and for the stories that they tell about our history as Louisianians.[4] In addition to being resting places for our dead, many of Louisiana's cemeteries are repositories of significant examples of art, architecture, and archaeology as well as containing the history of their respective communities.[5] This importance should not be taken lightly, as these significant elements represent a substantial tourist draw for the State,[6]and also present an endless source of data for historians, taphologists, anthropologists, archaeologists, and genealogists that collectively leads us to a better understanding of our own culture: who we are, where we have come from, and where we are going.[7] *Page 3 
For all of these reasons, cemetery preservation is extremely important, especially in Louisiana. We, the living, are custodians of the dead and the stories that they can tell, and we must strive to protect those stories. Through the lens of the necessity to further the preservation of cemeteries in Louisiana for aesthetic, historic, and scientific reasons, as well as to fulfill our moral duties to the wishes of the dead, we now examine the law related to the questions that you presented in your opinion request.
Before getting into the substance of your questions, it is important to understand the legal meanings of certain terms. A "cemetery authority" is defined as "any person, firm, corporation, limited liability company, trustee, partnership, association or municipality owning, operating, controlling or managing a cemetery or holding lands within this state for interment purposes." La.R.S. 8:1(9). As defined in the revised statutes, "cemetery space" means "a grave, crypt, vault, niche, tomb, lawn crypt, or any other property used or intended to be used for the interment of human remains."[8] La.R.S. 8:1(12). This is a fairly broad definition which appears to be calculated to encompass every type of burial, interment, or other housing for human remains. Also important to your request, for reasons that will be discussed below, are the definitions of the terms "vault" and "wall vault." A "vault" is defined, in La.R.S.8:1(19), as "a space in a mausoleum of sufficient size, used or intended to be used, to entomb human remains." A "wall vault" is not defined in the Revised Statutes. For the purposes of this opinion, "wall vault" is interpreted to refer to an entombment within a mausoleum as both of those terms are defined in La.R.S. 8:1.[9] It is the opinion of this Office that anything termed as a "vault" or a "wall vault" also falls under the definition of "cemetery space." Finally, a "tomb" is defined, in La.R.S.8:1(30) as "a structure or building for the entombment of human remains in crypts or vaults in a place used or intended to be used, and dedicated, for cemetery purposes." Again, it is the opinion of this Office that anything referred to as a "tomb" also falls under the definition of "cemetery space."
II. La.R.S. 8:308
Abandonment and demolition of cemetery spaces are considered in La.R.S. 8:308. As to abandonment, there are two different sets of rules. In parishes with a population that exceeds 500,000, La.R.S. 8:308(B) applies to abandonment procedures. Other parishes are bound by the rules relating to abandonment in La.R.S. 8:308(C). The major difference between these two provisions is the amount of time that must elapse before a cemetery space may be considered *Page 4 
abandoned. Under La.R.S. 8:308(B), the time is ten years. Under La.R.S.8:308(C), the time is twenty-five years. Presumably, this statute was divided by population size with a reality in mind that larger population centers may have a need to reuse cemetery spaces more often (i.e., they would need a higher turn-over rate) than rural areas based on sheer numbers of people dying within those jurisdictions.[10] Interestingly, the shorter duration for abandonment in the high population parishes is limited in La.R.S. 8:308(B) to municipal, religious, and nonprofit cemeteries. It is the opinion of this Office that this degree of specificity in La.R.S. 8:308(B) was intended to exclude private, for-profit cemeteries from the shorter abandonment period, even in the larger population areas. As to the process for declaring a cemetery space abandoned, the rules set forth in La.R.S. 8:308(B) and (C) are fairly straightforward and we refer you to them rather than recapitulate them in their entirety here. It is important to note that the provisions of La.R.S. 8:308 do not allow the time-delays to be truncated because a space has been abandoned-in-fact for the requisite number of years. The time-delays run from compliance with the notice requirements.[11]
As to the question of who La.R.S. 8:308 applies to, it is the opinion of this Office, based on the language in La.R.S. 8:308(A), that the abandonment rules apply to any party, natural or juridical, that is covered by the definition of a "cemetery authority." Basically, this refers to any entity that runs a cemetery in the State.
III. La.R.S. 8:903 and La.R.S. 8:903.1
Before reaching a discussion of the portions of Title 8 that deal with repair and renovation of cemetery spaces, it is important to note that La.R.S. 8:308(B) clearly states that abandoned cemetery spaces may not be demolished. It is unclear why this restriction is not contained within La.R.S. 8:308(C), but this omission is likely of little import, as it is the opinion of this Office that demolition is strictly prohibited under La.R.S. 8:903, irrespective of population size of the parish in which the cemetery is located.
The repair, renovation, and resale of cemetery spaces that are more than fifty years old is provided for in La.R.S. 8:903 and 8:903.1. These statutes are distinguished from La.R.S. 8:308 in that, in order for a cemetery authority to do repairs or renovations to cemetery spaces, abandonment need not be *Page 5 
established. It is well accepted that many of the cemeteries in this State are in a state of disrepair.[12] More commonly, though, entire cemeteries are not derelict, but rather some of the cemetery spaces within the cemeteries are in bad shape. It is understandable that operators of cemeteries would want to beautify their cemetery through renovation projects on the run-down spaces within. Subject to some limitations, such repair and renovation is permissible under La.R.S.8:903 and 8:903.1.
A. La.R.S. 8:903
It is clearly stated in La.R.S. 8:903(A) that "[c]emetery authorities may renovate and repair but not demolish . . ." [emphasis added] a derelict cemetery space. Although La.R.S. 8:903.1 is silent on the issue of demolition, it is the opinion of this Office, because that section refers to vaults and wall vaults — both types of cemetery spaces — that La.R.S. 8:903.1 is subject to the more general rule forbidding the demolition of any cemetery space under La.R.S. 8:903(A).[13]
The foregoing analysis of demolition relates to the power of cemetery authorities, not to the actual descendants/owners of the spaces themselves.[14] Although we strongly believe that repair and renovation should be the favored approach to dealing with derelict cemetery spaces, we are not aware of any prohibition against descendants or space owners from demolishing a cemetery space, provided that the remains therein are properly cared for in accordance with Title 8. A cautionary note is warranted here. For older cemetery spaces, the descendants of those interred therein may be numerous. It is possible that demolition of a space by less than the entirety of the descendants of those interred may open the demolishers up to liability from other descendants who did not want the space demolished.
As to the process by which repair or renovation should occur, La.R.S.8:903 and 8:903.1 are somewhat vague. Both La.R.S. 8:903 and 903.1 require actual notice or attempts to notify proper parties of a cemetery's intent to undertake work on a cemetery space. This notice must be in the form of publication in the local official journal and through the placement of notices on the cemetery spaces slated for repair or renovation. Because the notices at the cemetery *Page 6 
spaces are generally going to be exposed to the elements, we suggest that these notices should be posted on plastic placards in a conspicuous location near the cemetery space. Similar notices should be placed at the entrances to the cemetery. Additionally, written notice of the intent to repair or renovate is required to be sent to the record owner via certified or registered mail. After such notice is mailed, the record owners have one year to make the necessary repairs. Following the one year period, should no objection be received from the record owner, then, and only then, can the cemetery "proceed with the repairs or renovations." La.R.S. 8:903(A). Cemetery authorities must make diligent efforts to accomplish the notice requirements set forth in the law before undertaking any repairs or renovations to derelict cemetery spaces. Additionally, if at any point during the repairs or renovations, the human remains within need to be moved, the next of kin[15] must, once again, be notified. La.R.S. 8:659. If the next of kin, after a diligent effort, cannot be reached, the remains may only be moved by an order of a court in the jurisdiction in which the cemetery is located. La.R.S. 8:659(B).
The provisions of La.R.S. 8:903 provide for reimbursement to the cemetery authority that spends money on the repair or renovation of a cemetery space when the descendants cannot be located. However, the law has nothing to say about a gained ownership interest in the cemetery space by a cemetery that pays for repairs. Thus, it is the opinion of this Office that cemeteries that fund repairs or renovations of derelict cemetery spaces do so at their own expense initially.
Should such cemeteries want to gain an ownership interest in those spaces, there are different rules for private, for-profit versus municipal, religious, and nonprofit cemeteries. Although the law is silent on the rules applicable to private, for-profit cemeteries, they seem to be excluded from the shorter delays provided in La.R.S. 8:903(C). It is the opinion of this Office that they must follow the procedures related to abandonment in La.R.S. 8:308. As to municipal, religious, and nonprofit cemeteries, once repairs have been done, should the owners or their successors or heirs remain unlocated, after diligent efforts, for a period of three years following the repairs, the cemetery authority may obtain ownership of that space. Additionally, the resale of such spaces is also subject to the procedures outlined in La.R.S. 8:308. As noted above, we believe that "diligent efforts" include, but are not limited to, following the advertising procedures noted in La.R.S. 8:308 and La.R.S. 8:903-903.1 and placing plastic placards near the spaces sought to be repaired or their ownership reclaimed, as well as at cemetery entrances.
Another issue that arises in light of the foregoing discussion is the question of what happens if a family does come forward once notice is given of the intent to *Page 7 
repair under La.R.S. 8:903, but refuses to pay for the repairs? Such a scenario is not contemplated in the law. In such a situation, it is the opinion of this Office that the cemetery may proceed with the repairs if they are not objected to by the family,[16] but it would have to do so at its own expense. There is also no language in the law regarding whether a cemetery authority may repossess a space if the family fails to pay for the repairs upon actual notice being achieved within the three year period[17] following the repairs. It is the opinion of this Office that, because families may not be able to afford the repairs that a cemetery believes are warranted and because of the sentimental attachment to cemetery spaces by descendants, that the law does not contemplate a repossession simply because a family may be too poor to pay for maintenance. That said, should a family want to use the cemetery space after the repairs have been made at the expense of the cemetery, La.R.S. 8:903 permits cemetery authorities to condition the use on payment of the costs of the repairs.
B. La.R.S. 8:903.1
The rules related to vaults and wall vaults under La.R.S. 8:903.1
differ somewhat from those for other cemetery spaces under La.R.S. 8:903. We suspect that this difference is due to the communal nature of vaults and wall vaults — these spaces are generally part of a larger structure at a cemetery, whose deterioration in one space could affect the spaces of others. With respect to these spaces, the law provides cemeteries with the right to immediately undertake repairs or renovations for which the cemetery has no evidence of ownership.[18] Once the repairs have been completed, the cemetery must place notice in the local official journal requesting people with evidence of ownership to come forward within sixty days to prove such ownership. Following the lapse of the sixty-day period, the cemetery authority may reclaim ownership of these spaces and may resell them subject to the procedural requirements of La.R.S. 8:903.1. This statute also provides, in La.R.S. 8:903.1(A)(3), that, should the cemetery records indicate ownership of a vault or wall vault in need of repair, notice must be sent to the owners and published in the parish's official journal giving the owners six months to come forward to prove ownership before the *Page 8 
cemetery reclaims the ownership of the space. Like La.R.S. 8:903, La.R.S. 8:903.1(A)(4) similarly requires posting notices in conspicuous places within the cemetery itself. We recommend that such notice, again, be made on plastic placards and placed near the vault or wall vault slated for repair as well as placed at entrances to the cemetery.
Unlike the requirement of La.R.S. 8:903, La.R.S. 8:903.1 does not require notification of the next of kin prior to moving remains for the planned repairs. Remains can be temporarily moved for the purpose of effectuating repairs to a vault or wall vault. La.R.S. 8:903.1(A)(2). Another difference between La.R.S. 8:903 and La.R.S. 8:903.1 is that if an owner comes forward within the prescribed notice period before a reclamation of ownership, the cemetery authority can require a payment of that person's pro rata share of the repair costs. Should they refuse to pay these costs, ownership reverts to the cemetery authority. None of the provisions of La.R.S. 8:903.1 are applicable to those cemetery spaces placed in perpetual care. La.R.S. 8:903.1(B).
IV. The Meaning of "Repair," "Renovate," and "Maintain"
Because the terms "repair," "renovate," and "maintain" are not defined in Title 8, we must give them their usual, common sense definitions.[19]
The Oxford English Dictionary[20] provides the following definitions for the word "repair":
 To restore (a composite thing, structure, etc.) to good condition by renewal or replacement of decayed or damaged parts, or by refixing what has given way; to mend.
 To renew, renovate (some thing or part); to restore to a fresh or sound condition by making up in some way for previous loss, waste, decay, or exhaustion.
The Oxford English Dictionary provides the following definition for the word "renovate":
 To renew materially; to repair; to restore by replacing lost or damaged parts; to create anew.
The Oxford English Dictionary provides the following definition for the word "maintain": *Page 9 
 To keep up, preserve, cause to continue in being (a state of things, a condition, an activity, etc.); to keep vigorous, effective, or unimpaired; to guard from loss or deterioration.
Although each of these definitions vary in some way, the clear theme running through all of them is that the actions contemplated by those words are intended to support the preservation of a thing. These definitions stand in stark contrast to the definition for "demolish," which is defined by the Oxford English Dictionary thus:
 To destroy (a building or other structure) by violent disintegration of its fabric; to pull or throw down, pull to pieces, reduce to ruin.
The definition of demolish clearly indicates that the actions contemplated by that word are destructive in nature and not preservative. It is the opinion of this Office that, though repair, renovation, and maintaining may require the removal and replacement of certain components of a cemetery space to ensure its continued existence, these terms, which connote preservation, do not incorporate the term demolition and that the law does not contemplate the demolition of cemetery spaces in order to achieve the goal of cemetery beautification.
V. The Importance of Preservation A civilized society values its past, its history, and it values its natural environment as well. If we are that society, we have a strong investment in our . . . graveyards and must work to protect that investment.[21]
As was noted at the outset of this opinion, Louisiana's cemeteries are extremely important to many people for aesthetic, sentimental, cultural, historical, and scientific reasons. All of these reasons depend on the continued preservation of our cemeteries. Keeping these reasons in mind, the Legislature crafted a series of laws aimed at maintaining the integrity of the cemeteries in this State through repair and renovation.
It is the sincere hope of this Office that such repair and renovation work will be done carefully and according to accurate historic standards. In that vein, we note that there are numerous groups, some of which are non-profit organizations, that are equipped to advise and assist in accurate and quality repairs and renovations of historic cemeteries.[22] We suggest that, when in doubt as to the historic *Page 10 
appearance of a cemetery space in need of repair or restoration, that some such group be contacted for advice.
It is also important to keep in mind that some of the cemeteries in this State are noted historic treasures that are protected by either State or federal law.[23] Some of the cemeteries in the State of Louisiana are also dually designated as cemeteries and archaeological sites. Before repairs and renovations in such cemeteries are undertaken, we strongly urge those intending to do the work to contact the Louisiana Division of Historic Preservation and the Louisiana Division of Archaeology for advice and to ensure compliance with those agencies' rules and regulations as well as to determine if the cemetery is listed as a protected site with the federal government.[24] Whether a cemetery is legally defined as an archaeological site[25] or not, it is an archaeological site-in-fact as it serves as a repository for the material culture for the period that it represents. Accordingly, it should be treated as such and repairs should not be undertaken with disregard to the historic and archaeological integrity of the cemetery. It is also important to note that, though the protected cemeteries in Louisiana are generally so protected due to the status of those interred within, the other cemeteries in the State also provide a unique window into our past that must not be disregarded when planning often well-intentioned rehabilitation efforts.
VI. Recapitulation and Conclusion
As an answer to your specific questions posed at the beginning of this opinion, it is the opinion of this Office that demolition of cemetery spaces may not be undertaken by a cemetery authority in furtherance of a broader beautification program. Indeed, demolition cannot be undertaken by a cemetery authority at all. Such entities are limited to repair and renovation of derelict cemetery spaces. Demolition is an option, albeit an unfavored one, to the record owners or their successors or heirs. Accordingly, if a cemetery authority has become an owner by operation of law, it can, but probably should not, destroy a cemetery space.
The procedures for cemetery space abandonment are laid out in La.R.S.8:308. However, if repairs are necessary and are undertaken by the cemetery authority, *Page 11 
different delays may apply under La.R.S. 8:903 and 8:903.1. Under La.R.S. 8:308, a cemetery space must generally be abandoned for ten or twenty-five years (depending on the size of the parish), with notice requirements applicable to both periods, before it can be reclaimed as abandoned by a cemetery authority. Under La.R.S. 8:903, if a cemetery space is in need of repair and the cemetery authority undertakes those repairs, that space will be reclaimable by the cemetery authority in three years (for municipal, religious, and nonprofit cemeteries) or in ten or twenty-five years (for private, for-profit cemeteries), provided that the procedural requirements of La.R.S. 8:308 and La.R.S. 8:903
have been met. In the case of vaults or wall vaults under La.R.S.8:903.1, a cemetery authority forced to make repairs may reclaim that cemetery space after sixty days (when an owner is unknown) or after six months (when the owner is known but fails to come forward), subject to the other procedural requirements of La.R.S. 8:903.1.
Finally, it is the opinion of this Office that the terms "repair," "renovate," and "maintain," as used in Title 8, envision the preservation of cemetery spaces and not their demolition. Additionally, it is further our opinion that de minimus repairs and maintenance do not qualify a cemetery authority to enforce the reclamation rights under La.R.S. 8:903
and 8:903.1. What is meant by this is that simply cleaning or minimal aesthetic upkeep does not give a cemetery authority the right to reclaim cemetery spaces. The repairs must be necessary to preserve the cemetery space's structural integrity or to protect the health and safety of the public — in short the need for the repairs must be imminent. Anything less than repairs when imminently needed merely to gain an interest in the cemetery space would undermine the general concept of the right to property.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:__________________________ RYAN M. SEIDEMANN Assistant Attorney General
CCF, Jr./RMS/tp
[1] The inviolate nature of human burial sites has been demonstrated by both federal and State laws in the past twenty years. See e.g., the Native American Graves Protection and Repatriation Act, 25 U.S.C. 3001,et seq.; see also, the Louisiana Unmarked Human Burial Sites Preservation Act, La.R.S. 8:671, et seq.
[2] See generally, David C. Sloane, THE LAST GREAT NECESSITY: CEMETERIES IN AMERICAN HISTORY (Johns Hopkins University Press 1995).
[3] Id. See also, Samuel Wilson, Introduction, in Mary L. Christovich, ed., NEW ORLEANS ARCHITECTURE VOLUME III: THE CEMETERIES at ix-x (Pelican Press 1997).
[4] See generally, Christovich, supra.
[5] Id.
[6] Gaspar J. "Buddy" Stall, LOUISIANA COD (CITIES OF THE DEAD) at 3 (2000) (Louisiana's cemeteries "are a part of the state's unique heritage. Visitors from outside the state are intrigued by them and visit them by the thousands."); Eric J. Brock, NEW ORLEANS CEMETERIES at 8 (Arcadia 1999).
[7] See e.g., Edwin S. Dethlefsen, The Cemetery and Culture Change:Archaeological Focus and Ethnographic Perspective, in MODERN MATERIAL CULTURE: EXPERIMENTAL ARCHAEOLOGY IN COLONIAL CEMETERIES, M.B. Schiffer, ed. (Academic Press 1981); Edwin S. Dethlefsen James Deetz, Death'sHeads, Cherubs, and Willow Trees: Experimental Archaeology in ColonialCemeteries, 31(4) AMERICAN ANTIQUITY 502 (1966); Ryan M. Seidemann,Stones and Bones: Can Taphologists and Archaeologists Happily Coexist?
30(2) AGS QUARTERLY 7 (2006).
[8] The terms "cemetery space" and "space" are used interchangeably throughout this opinion, but both refer to "cemetery space" as defined in La.R.S. 8:1(12).
[9] La.R.S. 8:1(21) defines "entombment" as "the placement of human remains in a maus oleum." La.R.S. 8:1(30) defines a "mausoleum" or "tomb" as "a structure or building for the entombment of human remains in crypts or vaults in a place used or intended to be used, and dedicated, for cemetery purposes.
[10] It should be noted that, though the thought of it may be abhorrent to some, the reuse of grave spaces is permitted by law in Louisiana. Seee.g., La.R.S. 8:1(36.1), La.R.S. 8:659, and La.R.S. 8:660. This practice, at least in the southern part of the State, was inherited from our ancestors on the European continent when cemetery spaces were at a premium and concepts related to the inviolate nature of those spaces were more lax than they are today. See e.g., Ken Worpole, LAST LANDSCAPES: THE ARCHITECTURE OF THE CEMETERY IN THE WEST at 65 (Reaktion Books 2003) (discussing the problems of overcrowding in traditional European graveyards).
[11] In addition, because of the unique nature of cemeteries in Louisiana property law, it is the opinion of this Office that the Civil Code rules on property abandonment do not apply to cemeteries.
[12] This reality has been documented by numerous authors and has been substantially exacerbated by the destruction wrought by Hurricanes Katrina and Rita. See, Ryan M. Seidemann, Sisters of Destruction: TheEffects of Hurricanes Katrina and Rita on Louisiana's Cemeteries, 1(3) EPITAPHS 22 (2006).
[13] This opinion is supported by some old Louisiana jurisprudence, in which the courts seemed to recognize that cemetery spaces were not to be destroyed. See e.g., Metairie Cemetery Ass'n v. Board of Assessors, 37 La.Ann. 32 (La. 1885).
[14] Throughout this opinion, the terms "descendants," "owners," and "successors or heirs" all refer to the same people: those with a legally-recognized ownership interest in a cemetery space. For the purposes of this opinion the term "ownership interest" refers only to the actual right of interment in a cemetery space.
[15] For the purposes of moving human remains, the proper "next of kin" to be contacted is laid out in La.R.S. 8:659.
[16] La.R.S. 8:903(A) states that "[u]pon failing to receive any objections, after due notice has been given, the cemetery authority may proceed with the repairs or renovations with impunity." Clearly, this gives a cemetery contemplating repairs the authority to proceed with those renovations in the absence of an objection, but it does not burden family with the costs of such work should they not want to undertake it.
[17] Which would actually be ten or twenty-five years (depending on the parish population) for private, for-profit cemeteries. La.R.S.8:308.
[18] It is important to note that such unilateral repair activity is only permitted for vaults or wall vaults that are more than fifty years old or vaults or wall vaults that are in cemeteries that are more than one hundred years old. No such authority exists in the law for spaces younger than those noted in La.R.S. 8:903.1 and it is the opinion of this Office that unilateral repairs in those instances are not permissible. The one exception to this opinion is a situation in which repairs must be undertaken to protect the public's safety and health.
[19] La.C.C. Art. 11.
[20] The Oxford English Dictionary is used herein because it is well-recognized as the most comprehensive compendium of English language usage, with coverage of all dialects of English, including American English. See generally, Simon Winchester, THE MEANING OF EVERYTHING: THE STORY OF THE OXFORD ENGLISH DICTIONARY (Oxford 2003).
[21] Lynette Strangstad, A GRAVEYARD PRESERVATION PRIMER at 6 (Altamira Press 1995).
[22] See e.g., Jen Kiernan, The Art of Restoration: The Marilyn MillerMausoleum, Woodlawn Cemetery, AMERICAN CEMETERY 17 (Apr. 2006), for a discussion of such restoration organizations. See also, Robert Florence, NEW ORLEANS CEMETERIES: LIFE IN THE CITIES OF THE DEAD at 209-211 (Batture Press 1997); Brock, supra at 8.
[23] Examples include the Landry Tomb in the Ascension Catholic Church Cemetery in Donaldsonville; the Christ Episcopal Church and Cemetery in Napoleonville; and Oakland Cemetery in Shreveport. See, National Register of Historic Places Database, located online at http://www.nr.nps.gov, accessed Aug. 3, 2007.
[24] Although such sites may be listed on the National Register of Historic Places, such a listing may not equate to actual legal protection. It typically only means that these sites must be considered in an overall historic preservation or environmental analysis under the National Environmental Policy Act or other such legislation.
[25] In this respect, we refer to the general jurisdiction of the Division of Archaeology under La.R.S. 41:1604 to define what is considered an archaeological site under Louisiana law. See, La.R.S.41:1604(1)(a-e).